## In re STUDEBAKER.

(Circuit Court of Appeals, Second Circuit. January 8, 1904.)

### No. 63.

1. BANKRUPTCY—DISCHARGE—OBJECTION—DESTRUCTION OF BOOKS.

Where a bankrupt, after losing his funds, which he had deposited in a bank, in gambling and speculations, destroyed or threw away his check-book and passbook, for the reason, as he testified, that they were "no further good to him," and it appeared from the schedule of creditors that of the $9,304.54 total liabilities over $7,600 was for money borrowed by the bankrupt, and, with the exception of $332.40, such sum was borrowed in the year 1902 after the destruction of the books, at which time his

debts were few and trifling in amount, the destruction of such books could not be said to have been with a fraudulent intent to conceal his true financial condition, so as to justify the denial of his discharge on that ground, as authorized by Bankr. Act July 1, 1898, c. 541, § 14, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427].

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 124 Fed. 945.

Herbert R. Limburger, for appellant.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. Upon this appeal there was no appearance for the objecting creditor, and no brief was filed in his behalf. Six specifications were filed against the discharge. The bankrupt and his wife were examined before the referee, and transcripts of their bank accounts were put in evidence, but although their testimony disclosed the names of several persons who might have been readily produced to contradict some of their most material statements, if untrue, no witnesses were called by the objecting creditor to sustain the specifications. The referee carefully considered all the specifications and discussed the evidence bearing upon all the questions presented. He found that none of the specifications were sustained, and that the bankrupt was entitled to his discharge. The district judge reached a different conclusion as to one of the specifications. Presumably he was satisfied that the referee's conclusions as to the others were sound—a presumption which is fortified by an examination of the record, which discloses nothing to warrant a reversal of those conclusions. The only specification, therefore, to be considered here is that the bankrupt destroyed his bank checkbook, passbook, and returned checks, showing his transactions with the Second National Bank as his bank of deposit.

The testimony shows that in 1897 the bankrupt received, by bequest from his father, 1,000 shares of stock in the Studebaker Carriage Company, and some real estate. He sold the real estate in 1900 for $5,000. He sold the shares of stock from time to time (the last share being sold in 1899) for $150,000. He was adjudicated a bankrupt on March 24, 1902. Out of the money he received from his father he paid old debts, amounting to $30,000. The residue he dissipated in stock speculations, in betting on the races, and in gambling at faro and other games, so that by the fall of 1901 he had nothing left. In February, 1899, he opened an account with the Second National Bank, depositing over $10,000. Subsequent deposits consist of large and small sums; the large ones represent the proceeds of the sale of the Studebaker Company stock, the small ones an occasional fortunate experience on the stock market. During all this period he was not engaged in any trade or business which required the keeping of any books. As the referee finds, the "account shows that he expended over $70,000 between February 21, 1899, and October 23, 1901, during which period he had no source of income excepting this bequest and his stock speculations and gambling." The account with the bank was overdrawn $1.47 on October 23, 1901. Studebaker had no funds with which to replenish it, and the account

ceased because he could not do so. Having thus closed out the account, he destroyed or threw away his checkbook and passbook (and apparently the returned checks), because under the circumstances, as he says, they were no good to him. In view of the manner in which he dissipated the money he deposited, his opinion that they were "no good to him" seems to be sound. The District Court suggested that "if the bankrupt had not destroyed his checkbook the creditor might have had some basis for investigating the truth of his statements" as to money lost in speculating and gambling. As to the speculations, the bankrupt did not claim to have entered into any except with one firm of brokers, whose name he gave; their books would have given all the details required, while the checkbook would only have given name, date, and amount. Evidently the objecting creditor was satisfied as to the truthfulness of the bankrupt's statements as to stock speculations, for he did not call the brokers. As to the money lost in gambling, it is very doubtful whether the checkbook would have given much basis for investigation, but whether that be so or not is not the essential point. The act refuses discharge when, "with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy [the applicant has] destroyed * * * books of account or records from which his true condition might be ascertained." Act July 1, 1898, c. 541, § 14, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]. The schedule of creditors is illuminative as to the circumstances under which the checkbook, etc., were destroyed. Of the $9,304.54 total liabilities, over $7,600 appears to have been for money borrowed by the bankrupt, and, with the exception of $332.40, borrowed during the year 1902. One item only, for goods sold and delivered ($11), appears to have been incurred in 1901. Three other items of like character aggregate $739.12, and are stated to have been incurred in 1901–02, presumably the greater portion of them in 1902. Evidently, while his bank account held anything, the bankrupt paid his debts as he incurred them; and, at the time he exhausted it and destroyed or cast aside his checkbook and passbook as "no further good to him," his debts were so few and trifling in amount that we do not feel warranted in holding, contrary to his assertions, that the destruction was undertaken in contemplation of bankruptcy, or with fraudulent intent to conceal his true financial condition.

The order of the District Court is reversed, and the cause remanded with instructions to grant the discharge.